Samuel G. KOORITZKY, Plaintiff,

v.

Alexis M. HERMAN, Secretary of Labor,[1] Defendant.

No. CIV. A. 91–3011–LFO.

United States District Court, District of Columbia.

Dec. 17, 1997.

---

1. Alexis M. Herman was sworn in as Secretary of Labor on May 9, 1997. Pursuant to FRCP 25(d)(2), she is substituted for Robert Reich, who left that office on January 12, 1997.

Christopher A. Teras, Jaeger & Teras, Washington, DC, for Plaintiff.

Samuel Kooritzky, Kooritzky & Associates, Arlington, VA, pro se.

Michael Joseph Ryan, U.S. Attorney's Office, Washington, DC, for Defendant.

*MEMORANDUM ON ATTORNEYS' FEES*

OBERDORFER, District Judge.

Plaintiff, Samuel G. Kooritzky, is an attorney specializing in immigration matters. He also sought to employ an alien for whom he was seeking certification as an "employment-based" immigrant. Plaintiff brought an action against the Secretary of Labor ("DOL") to bar enforcement of a regulation which would have stopped a pre-existing practice whereby an "employment-based" immigrant applicant could be certified for admission as a substitute for another. *See Kooritzky v. Reich,* 17 F.3d 1509 (D.C.Cir.1994). The defendant prevailed in this court. *Kooritzky v. Martin,* 1992 WL 172572 (July 1, 1992) (D.D.C.1992). The Court of Appeals reversed on the ground that DOL had adopted the new regulation without adequate notice

and comment. *Kooritzky v. Reich*, 17 F.3d 1509 (D.C.Cir.1994). The plaintiff, himself an attorney, prosecuted this claim *pro se*, assisted from time to time by four other attorneys, principally Christopher Teras. Substantial assistance was also rendered by law clerk James Moore, who was "reading" for the Virginia bar exam under the supervision of an attorney at plaintiff's law firm.

Plaintiff claims compensation for himself and his colleagues in the amount of $485,-334.43, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(b) ("the Act"). A July 17, 1996 Order referred to Magistrate Judge Alan Kay for recommendation the question of "whether plaintiff is entitled under the Equal Access to Justice Act ... to compensation for legal services and expenses and, if so, the amount thereof." After conducting seven days of hearings, Magistrate Judge Kay has filed a careful and thorough Report and Recommendation ("R & R") that plaintiff receive an award of $31,798.71.

Both parties have filed objections to Magistrate Judge Kay's Report and Recommendation. The defendant attacks his legal conclusions; plaintiff challenges other legal premises of the Report and many of the findings of fact. The accompanying Order adopts some of the recommendations and reconfigures others.

## I.

### A.

■ The parties' objections trigger *de novo* review by this Court. *See* FRCP 54(d); FRCP 72(b); Local Rule 504(c). Several are without merit. As a preliminary matter, plaintiff contends that the magistrate judge exceeded his jurisdictional authority in issuing the Report and Recommendation. Federal Rule of Civil Procedure 54(d)(2) authorizes a court to "refer a motion for attorneys' fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Rule 72(b), codified at 28 U.S.C. § 636(b)(1), is the federal analog to Local Rule 504, which permits magistrate judges to respond to dis-

positive motions with recommendations, but not orders.[2]

■ More substantively, defendant objects that plaintiff's status as a *pro se* litigant precludes him from obtaining any attorneys' fees. However, circuit law establishes that an attorney who represents himself and, in the words of the Act (28 U.S.C. § 2412(d)(1)(A)) is "the prevailing party ... in any civil action" is entitled to an award of "fees and other expenses" unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. *See Jones v. Lujan*, 887 F.2d 1096, 1097 (D.C.Cir. 1989). Cases construing other fee-shifting statutes have not overruled *Lujan*. Compare *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (FOIA); *Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C.Cir.1993) (Civil Rights Act); *see also Burka v. Department of Health & Human Services*, Civ. A. No. 92–2636, Memorandum and Order of March 21, 1997 (D.D.C.1997), *appeal filed* May 15, 1997 (FOIA). Moreover, plaintiff has presented a persuasive argument that the Act differs in both language and purpose from the attorneys' fee provisions of the Civil Rights Act and the Freedom of Information Act. *See* Plaintiff's Reply To and Clarification of Defendant's Notice to the Court Regarding Recent Case Law (137–1); *Spencer v. NLRB*, 712 F.2d 539, 550 (D.C.Cir.1983) (enumerating purposes of the Equal Access to Justice Act).

The *Jones v. Lujan* ruling seems particularly germane to the situation here, where plaintiff attempted on several occasions to obtain other counsel, but the attorneys he approached were either unwilling to assume responsibility for the case, or demanded fees beyond his means. For example, attorney Christopher Teras testified that Kooritzky asked him to serve as lead counsel in the case, but that "I had my own obligations in my office, and I just didn't feel that I could make a commitment to be lead attorney as such." Hrg. Tr. of Jan. 24, 1997 at 24. Teras did agree to assist plaintiff as much as he was able. *Id.* Kooritzky also testified that he

2. The Report and Recommendation stated that this case "was referred to the undersigned for a

Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 504."

approached other attorneys who declined to take on the case. Hrg. Tr. of Jan. 15, 1997 at 30–31. Kooritzky also informed the court that

> a limited number of attorneys were willing to take his case. However, these attorneys demanded a retainer in addition to the attorney fees that would be recouped under 28 U.S.C. § 2412. . . . Moreover, the attorneys that were willing to accept the case advised the Plaintiff that it would take a considerable amount of time to collect their legal fees if they won the case, which caused them to state they wanted higher fees than those allowed by statute and much higher than those being requested by the Plaintiff herein.

> Lastly, the attorneys that were willing to take the case demanded their fees in advance, and the Plaintiff could thereafter recoup the legal fees and expenses from the Government. Furthermore, these attorneys demanded their legal fees paid whether or not they won the case.

Resp. to Def's Opp. to Atty. Fees (55–1) at 6–7. As our Court of Appeals recognized in *Spencer v. NLRB*, the purpose of the Act was not only not "provide relief to victims of abusive governmental conduct," but to "induce [government] administrators to behave more responsibly in the future," and "to foster greater precision, efficiency and fairness . . . in the formulation and enforcement of governmental regulations." 712 F.2d at 550. By presenting this suit, Kooritzky clarified for the Labor Department its obligations under the notice and comment requirements of the Administrative Procedures Act; the fact that he himself was the only attorney willing to challenge the Department makes him no less entitled to compensation for the legal work required to do so.

### B.

As stated in the Report and Recommendation, the Act entitles plaintiff to an award of attorneys' fees only if (1) he was the "prevailing party"; (2) he "incurred" the expenses; (3) his net worth is below the statutory ceiling; and (4) the position of the United States in the underlying litigation was not "substantially justified." R & R at 3. Magistrate Judge Kay correctly concluded that plaintiff was the prevailing party, in that the Court of Appeals agreed that DOL had violated the Administrative Procedure Act by issuing the disputed regulation without appropriate notice and comment. Moreover, without saying so in the precise language of the statute, the Court of Appeals' acerbic comments on the merits must mean that they thought the DOL position was not substantially justified. As the Panel put it:

> Because the 'logical outgrowth' formulation may be merely another way of asking how much notice is enough, . . . answering the question may prove difficult in some cases. This is not one of them.

> The . . . interim final rule does not even come close to complying with the notice requirement . . . .

17 F.3d at 1513. *See Oregon Natural Resources Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir.1992) (No substantial justification where the government "lost on an issue of statutory interpretation that the previous panel did not consider close."); *Estate of Smith*, 930 F.2d 1496, 1502 (10th Cir.1991) (". . . the fact that a district court has upheld the agency's decision does not establish that the agency's position was substantially justified.")

There is no dispute that plaintiff meets the net worth requirements of the Act. *See* R & R at 5. The remainder of the objections—from the plaintiff—concern the analysis and calculation of fees and expenses "incurred."

### II.

### A.

Plaintiff played a dual role in this litigation. Although he conceded that he had no litigating experience, he participated in the advocacy role of an attorney, albeit for himself. *See Jones v. Lujan, supra.* For that he is entitled to a fee award measured by the statutory and judicial standards applicable to fee shifting. He also participated as an expert in immigration law as a supporter of his colleagues in the "study . . . and analysis" of the specialized immigration law and policy issues presented by this litigation. Section 2412(d)(2)(A) entitles him to an award of the

*"reasonable* cost of any study ... and analysis necessary for the preparation of the party's case and *reasonable* attorney fees." (Emphasis added.)

█ While the magistrate judge recommended that plaintiff be compensated for his own work on the case, he concluded that the fees attributed to other attorneys are not compensable under the Act, on the grounds that they were not "incurred" by plaintiff. Specifically, the Report and Recommendation noted the absence of any formal agreement between plaintiff and his colleagues concerning fees for legal services rendered. "Because Kooritzky incurred no expense or obligation to pay for [their] work, he may not recover any fees from the government for that work." R & R at 34. The arrangements between plaintiff and his colleagues, as described in the Report and Recommendation, are unusual. Christopher Teras "declined to act as lead counsel, but agreed to assist when he could.... Kooritzky incurred no expense or obligation to pay for Teras's work." R & R at 33. With respect to Margot Champagne, the Report & Recommendation cites plaintiff's testimony that " 'there was no formal agreement, written or even formally verbal ... on how they would get paid, or if they would get paid. Nobody expected to get paid.' " R & R at 39. As for Ronald Von Neumann, "Kooritzky had no arrangement to pay ... for his services .... According to Plaintiff ... '[Von Neumann] was happy to contribute something.' " R & R at 39.

█ As plaintiff notes, neither a written agreement nor the payment of fees is necessarily required to establish an attorney-client relationship. *See* Plaintiff's Supplement to Objections; *Matter of Lieber,* 442 A.2d 153 (D.C.App.1982); Va. St. S.Ct. Pt. 6 § 1(B). Nor, under theories of implied contract or *quantum meruit,* is a written contract necessary to create a legal obligation to compensate one's attorney. 10 *Williston on Contracts* § 1285A (3d ed. 1967) ("In situations where an express agreement is lacking ... the attorney is entitled to reasonable compensation for services performed on a *quantum meruit* basis"). Plaintiff argues that he had "contingent contract" relationships with

three of his four colleagues; such "contingent contracts" have also been held to compensable under the Act. *See Phillips v. General Services Adm'n,* 924 F.2d 1577 (Fed.Cir. 1991) (granting award to plaintiff whose retainer agreement provided that she owed no additional fees to her attorney unless she obtained a statutory fee award).

However, it is unnecessary to analyze plaintiff's legal obligations (if any) to his colleagues, because the existence of such obligations does not necessarily determine whether a party has "incurred" fees and expenses under the Act. Our Court of Appeals has squarely addressed the question, and held that "the mere non-existence of liability for legal fees between client and counsel does not automatically disqualify a plaintiff from recovering attorneys' fees." *American Ass'n of Retired Persons v. EEOC,* 873 F.2d 402, 406 (D.C.Cir.1989). In *AARP,* the court awarded attorneys' fees under § 2412 to plaintiffs represented by *pro bono* counsel, *i.e.,* where there was an express agreement that the parties were *not* obliged to pay their attorneys. As the Court of Appeals noted in *Unification Church v. I.N.S.,* 762 F.2d 1077 (D.C.Cir.1985), such an award finds support in the legislative history of the Act: "computation of attorney fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client." *Id.* at 1083, *citing* H. Rep. No. 96–1418 (1980) at 15. *Cf. Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995) ("the prevailing market rate method heretofore used in awarding fees to traditional for-profit firms and public interest legal services organizations shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals."); *Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1521 (D.C.Cir. 1988) ("It is not inconsistent with the avoidance of windfalls to pay attorneys at rates commensurate with prevailing community standards of attorneys of like expertise doing the same sort of work in the same area").

It is not disputed that these three attorneys performed legal work on behalf of plaintiff. *Cf. American Ass'n of Retired Persons*

*v. EEOC,* 873 F.2d 402 (D.C.Cir.1989) (denying plaintiff's fee request for attorneys who served as lead counsel, but who were counsel of record only for co-plaintiff). Nor is this a case where a third party assumed financial responsibility for plaintiff's attorney fees and costs. *Cf. United States v. Paisley,* 957 F.2d 1161 (4th Cir.1992) (defendants did not "incur" expenses that were indemnified by their former employer).[3] Teras, Champagne and Von Neumann assisted plaintiff in his successful challenge to a government regulation; as such, they are entitled to compensation under the Act.[4]

Plaintiff's fourth colleague, Sean Purcell, was a contract attorney paid by Teras to work on plaintiff's case. The Report & Recommendation disallowed Purcell's fees on the grounds that they were incurred by Teras, not Kooritzky. R & R at 40, 38. Having now established that Teras's fees are compensable under the Act, it follows that his expenses are as well.

### B.

■ The remaining individual on plaintiff's legal team was legal assistant Thomas Moore, Sr. Moore was not an employee of Kooritzky or his firm, but was "reading" for the Virginia bar examination under the supervision of another firm attorney. Moore was required to devote 18.5 hours per week to that project, and was prohibited from accepting compensation for any legal work he might perform while "reading." R & R at 2. Moore agreed to work on plaintiff's lawsuit during his remaining time. *Id.* Plaintiff did not promise to compensate Moore, but states that Moore and Teras reached a contingency agreement whereby Moore would assist in

the preparation of plaintiff's case as an independent contractor, and would be reimbursed if fees were recovered. R & R at 36.

The Report & Recommendation concluded that plaintiff was not entitled to fees for work performed by Moore, based on the holding of *Ashton v. Pierce,* 580 F.Supp. 440, 443 (D.D.C.1984), that a prevailing plaintiff can recover only the "actual salary cost" of a legal assistant—which in Moore's case, is zero, R & R at 33-37. Although *Ashton v. Pierce* was cited by the defendant, its holding is not the law of this circuit, which is that "paralegals and law clerks are compensated at their market rate" when calculating statutory fee awards. *In re Donovan,* 877 F.2d 982, 992 n. 20 (D.C.Cir.1989) (citations omitted). In *Missouri v. Jenkins,* the Supreme Court analyzed the question of paralegal fees in some detail, and concluded that fee awards should cover separately billed paralegal time. 491 U.S. 274, 287–88, 109 S.Ct. 2463, 2471–72, 105 L.Ed.2d 229 (1989). Although the *Jenkins* court addressed the question in the context of 42 U.S.C. § 1988, its analysis was not based on that statute, but on an assessment of how attorneys have historically accounted for paralegal costs in the billing of legal services. *West Virginia Univ. Hosp. v. Casey,* 499 U.S. 83, 99, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991). Its reasoning is thus equally applicable to the Equal Access to Justice Act, which—like the statute at issue in *Jenkins* —provides that a fee award "shall be based on prevailing market rates." 28 U.S.C. § 2412(d)(2)(A).

Like Teras, Champagne and Von Neumann, Moore was a member of the *pro bono* legal team assembled by plaintiff. His time is thus compensable under the Act to the

**3.** A comparison of *AARP* and *Paisley* suggests that the purpose of the "incurred" requirement is to prevent the recoupment of fees by parties who do not meet the net worth requirements of the Act. In *AARP,* a small non-profit organization and an individual plaintiff submitted a fee application not only for their own lawyers, but for lead counsel retained by co-plaintiff AARP, whose net worth made it ineligible for a fee award under the Act. In *Paisley,* it was the Boeing Corporation that had indemnified its former employees in a suit where the corporation was a co-defendant. *See Unification Church,* 762 F.2d at 1082 ("organizations obviously not qualified for an award ... would be able to persuade

individuals to be among the parties, and the organization would then receive free legal services if its side were to prevail").

**4.** *Pro bono* arrangements in challenges to government regulations, and the recovery of fees thereon, are not limited to cases involving non-profit organizations or indigent individuals. *Cf. National Ass'n of Mfgrs. v. Dep't of Labor,* 962 F.Supp. 191 (D.D.C.1997) (granting § 2412 attorneys' fees to the National Association of Manufacturers, whose counsel served on a *pro bono* basis).

extent that he was performing legal work. *See Missouri v. Jenkins,* 491 U.S at 288 n. 10, 109 S.Ct. 2463 ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *American Petroleum Inst. v. U.S. Environmental Protection Agency,* 72 F.3d 907 (D.C.Cir.1996) (subtracting from fee request hours billed by attorneys and paralegals for delivering documents to the court).

### III.

### A.

■■ Having established which members of plaintiff's legal team are eligible for attorney fees, the next issue is the amount of their fees for which plaintiff may be reimbursed. Plaintiff is entitled, by § 2412(d)(2)(A) to an award of "reasonable attorneys' fees" at "prevailing market rates for the kind and quality of services furnished" subject to the ceiling established by § 2412(d)(2)(A)(ii). Contrary to the objections filed on behalf of the United States, § 2812 provides that "fees and other expenses *includes*[5] the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorneys' fees." *See West Virginia University Hospital, Inc. v. Casey,* 499 U.S. 83, 91, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *S.E.C. v. Price Waterhouse,* 41 F.3d 805, 809 (2nd Cir.1994).

Magistrate Judge Kay well states the standards established by the courts for the calculation of the amount of an award from the government pursuant to the various fee shifting statutes.

"[N]o compensation is due for nonproductive time." *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980). Redundant or excessive hours are not compensable. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "Similarly, no compensation should be paid for time spent litigating claims upon which

the party seeking the fee did not ultimately prevail." *Copeland,* 641 F.2d at 891–92.

The applicant must submit an itemized statement from each attorney "stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). "An applicant for attorneys' fees is only entitled to an award for time reasonably expended. Thus the fee application must also contain sufficiently detailed information about the hours logged and the work done." *National Assoc. of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 (D.C.Cir.1982). The party seeking attorney fees "bears that burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. "Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorney's fees. Attorneys who anticipate making a fee application must maintain contemporaneous and standardized time records which accurately reflect the work done by each attorney." *National Assoc. of Concerned Veterans,* 675 F.2d at 1327.

R & R at 3–4.

### B.

Plaintiff represented on May 6, 1996, that he worked on this case for 1,043.5 hours for which he claimed a base fee award of $127,-306.20 and an additional $104,350 as a "special factor" adjustment. The Magistrate Judge conducted five days of evidentiary hearings. From the testimony there and from the extensive documentary record he found that because plaintiff lacked the necessary contemporaneous time records, plaintiff "was unable to confirm many ... seemingly excessive hours worked, or to provide explanations for double billings and periods during which he claims to have worked more than 24 hours in a day." R & R at 9. Indeed, the Magistrate Judge, considering the fact that plaintiff worked on this case primarily after

his regular business hours, was skeptical that plaintiff could have possibly worked the number of hours claimed. R & R at 10. In addition, the Magistrate Judge found that a large portion of the time for which plaintiff seeks compensation "was admittedly expended as a result of [plaintiff's] lack of experience and expertise in the field." R & R at 9. Plaintiff conceded on deposition: "Research, gosh, I shouldn't even talk about the research we did but, you know, we knew nothing. All we knew was immigration. I still personally don't know how to do a court case." *Id.* There was a further finding that neither plaintiff nor his assistant, Moore, "had ever prepared a complaint before, and [plaintiff] admitted that they prepared so many drafts, it was ridiculous." *Id.* Other work, claimed to have consumed over 150 hours, was perceived by the Magistrate Judge to be demonstrably redundant. Finally, the Magistrate Judge eliminated from consideration "time spent on issues on which [plaintiff] did not prevail." For as the Supreme Court has opined: "[W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Applying these guidelines to the facts, the Magistrate Judge painstakingly itemized the fee claims, approving some, adjusting some, and disallowing some. His methodology is unexceptional. However, on review, some adjustment is required.

The observations of the Magistrate Judge about plaintiff's failure to maintain satisfactory records of his time and his candidly admitted absence of court experience are well taken. These two factors impair plaintiff's claim. Not incidentally, the plaintiff's inexperience and disorderly recordkeeping imposed an enormous and unnecessary burden on the Court and the Magistrate Judge.[6]

For example, the Magistrate Judge recommends disallowance of any award measured by the time plaintiff devoted to obtaining interim payment. On that aspect of the mat-

ter plaintiff did not prevail and is not entitled to compensation.

On the other hand, the Magistrate Judge recommended denial of any award reflecting time spent by plaintiff in his attempt to join the INS and the motion to compel compliance. Plaintiff's opposition correctly points out, however, that DOL's ruling was inextricably linked with INS policy and actions. While plaintiff did not fully succeed in joining INS formally as a party, he did succeed in obtaining an order which required DOL to use its good offices to seek INS action. Accordingly, some, but not all the time spent on that endeavor should be considered as a basis for an award.

The same considerations obtain with respect to the Motion to Compel. After the plaintiff filed the motion defendant took the action sought, thereby mooting plaintiff's claim. Therefore, the time required for that effort is entitled to recognition.

While the poor recordkeeping is to be deplored, the Magistrate Judge worked his way through the maze to recognize some time charges which were prepared and recorded in a very crude and inefficient manner. Plaintiff points to support for this approach in Supreme Court and Circuit Court decisions. The *Hensley* Court observed, for example that:

> Plaintiff's counsel, of course, is not required to record in great detail how each minute of time was expended. But at least counsel should identify the general subject matter of his time expenditure.

461 U.S. at 438 n. 12, 103 S.Ct. 1933. *See also Jean v. Nelson*, 863 F.2d 759, 772 (11th Cir.1988), *aff'd Commissioner v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Moreover, the inefficient are entitled to compensation measured by the time a reasonably efficient counsel should spend on a task. Here some of the recommendations ask too much of successful, albeit awkward, counsel in this protracted litigation.

Finally, plaintiff is entitled to be compensated for some, though not all, of the time

---

6. Fortunately, for the Court of Appeals, plaintiff was represented there by apparently able, and as

matters turned, successful lead counsel.

billed in conjunction with his fee request, notwithstanding the fact that some of that work was completed after submission his initial fee request. Moreover, some of the hours spent by plaintiff on this must be attributed not to his incompetence, but to the vigor with which the defendant opposed his motion.

For the foregoing reasons, the specific recommendations of Magistrate Judge Kay to grant plaintiff's request are modified as follows:

A. *1991* (Total Granted: 136 hours)

1. 10/30/91. Granted: 3 hours. The entry is adequately descriptive to justify three hours, where the interim and final rules were lengthy and detailed.

2. 11/12/91–11/17/91; 11/19/91–11/26/91. Granted: 80 hours. Plaintiff claimed compensation measured by 144 hours of work to "Review, draft, and redraft Injunction for submission to the Court consistent with the rules of the Court and with applicable case law." Whether plaintiff knew it or not F.R.Civ. P. 11 imposed upon him, as attorney for himself, a very high standard of care in the launching of a litigation and threatened sanctions for failure to comply with its strictures. It may be that 144 hours were more than was reasonably necessary for this task. But it could reasonably require an efficient attorney at least a 40 hour week of work, starting from ground zero, to file this case in a manner that would pass muster under Rule 11.

3. 11/27/91. Granted: 1 hour. Plaintiff charged an hour for "correspondence" with U.S. Attorney General, Secretary of Labor and U.S. Attorney advising them of filing for an Injunction. The Report and Recommendation disallowed credit for the hour because plaintiff "does not specify the work performed." However, "correspondence" in the shorthand of time charges means "writing letters." That hour should be credited.

B. *1992* (Total Granted: 87.5 hours)

1. 8/12/92–8/16/92, 8/18/92, 8/31/92. Granted: 35 hours. The entries essentially refer to the preparation of plaintiff's appeal, a task which might reasonably consume 35 hours.

2. 9/21/92—9/22/92. Granted: 0 hours. Defendants prevailed in their motion for summary affirmance before the Court of Appeals. *See Kooritzky v. Reich,* 1993 WL 191787 (D.C.Cir.1993).

3. 9/22/92—9/27/92, 9/29/92—10/5/92. Granted: 0 hours. defendants prevailed in their motion for summary affirmance before the Court of Appeals. *See Kooritzky v. Reich,* 1993 WL 191787 (D.C.Cir.1993).

C. *1993* (Total Granted: 142.5)

1. 8/17/93—8/22/93. Granted: 20 hours. The case file contained lengthy and complex documents relevant to plaintiff's appeal.

2. 9/5/93—9/12/93. Granted: 30 hours. Review and revision could reasonably consume this amount of time. To the extent that plaintiff spent some of this time reading cases cited by his legal assistant, it was time well spent.

3. 11/12/93—11/15/93, 11/21/93— 11/23/93 Granted: 40 hours. This is a reasonable amount of time to review and analyze defendants' appellate brief and the cases cited therein.

4. 11/16/93—11/20/93, 11/24/93— 11/26/93. Granted: 35 hours. Thirty-five hours could reasonably be expended on this activity.

D. *1994* (Total Granted: 44.1 hours)

1. 8/2/94. Granted: 2 hours. The cited research related to defendant's proposed implementation order.

2. 9/21/94. Granted: 2.25 hours. Plaintiff achieved a partial victory on this issue.

3. 9/22/94. Granted: 2.0 hours. Plaintiff achieved a partial victory on this issue.

4. 9/23/94. Granted: .75 hours. Plaintiff achieved a partial victory on this issue.

E. *1995* (Total Granted: 30.75)

1. 6/30/95. Granted: 1.5 hours. For reasons stated above, plaintiff is entitled to some, though not all, of the hours requested for work related to his request for attorney fees.

2. 7/6/95. Granted: 1 hour. For reasons stated above, plaintiff is entitled to some, though not all, of the hours request-

ed for work related to his request for attorney fees.

3. 7/19/95. Granted: .5 hours. For reasons stated above, plaintiff is entitled to some, though not all, of the hours requested for work related to his request for attorney fees.

4. 8/14/95, 8/28/95. Granted: 1 hour. For reasons stated above, plaintiff is entitled to some, though not all, of the hours requested for work related to his request for attorney fees.

5. 8/29/95. Granted: 2 hours. For reasons stated above, plaintiff is entitled to some, though not all, of the hours requested for work related to his request for attorney fees.

6. 10/2/95. Granted: 2 hours. Plaintiff billed 2 hours for preparing for a court hearing. Although plaintiff did not specify the nature of the hearing, docket entries reveal that there was a status hearing on the following day that date which served the purpose of the court.

7. 10/3/95. Granted: 2 hours. Plaintiff claims credit for 2 hours attending a court hearing on 10/3/95. The Recommendation would credit no time for attendance at that hearing because plaintiff failed to state its purpose. Docket entries reveal that there was a status hearing on that date which served the purpose of the court; plaintiff is entitled to credit for attending it. Travel and waiting time plus the time of the hearing could reasonably consume 2 hours.

8. 10/9/95. Granted: 2 hours. For reasons stated above, plaintiff is entitled to some, though not all, of the hours requested for work related to his request for attorney fees.

9. 10/11/95. Granted: 2 hours. For reasons stated above, plaintiff is entitled to some, though not all, of the hours requested for work related to his request for attorney fees.

10. 10/16/95. Granted: .75 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

11. 10/17/95. Granted: .75 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

12. 10/18/95. Granted: .75 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

13. 10/19/95. Granted: .75 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

14. 10/30/95. Granted: .5 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

15. 11/15/95. Granted: .75 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

16. 11/20/95. Granted: .75 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

17. 11/21/95. Granted: .75 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

18. 11/23/95. Granted: 1.5 hours. For reasons stated above, the plaintiff is also entitled to partial compensation for work on the semi-successful Motion to Compel.

Substituting these revised hourly totals for those contained on page 32 of the Report and Recommendation, Kooritzky is entitled to the following fees for his own work:

| Year | Hours | Rate | | Total |
|---|---|---|---|---|
| 1991: | 136 hrs x | $113.48 | = | $15,433.28 |
| 1992: | 87.5 hrs x | $116.33 | = | $10,178.88 |
| 1993: | 142.5 hrs x | $120.00 | = | $17,100.00 |
| 1994: | 44.1 hrs x | $121.73 | = | $ 5,368.29 |
| 1995: | 30.75 hrs x | $124.88 | = | $ 3,840.66 |
| Total | | | = | $51,920.51 |

The rates employed by Magistrate Judge Kay reflect the $75 statutory base rate, adjusted upward for a cost-of-living increase. R & R at 29. In his Objections to the Report and Recommendation, Kooritzky also argues that he is entitled to an additional "special factor" adjustment to the statutory fee rate based on his expertise in immigration law. However, our Court of Appeals

has determined that such special factor enhancements are available only for lawyers whose specialty "requir'[es] technical training or other education outside the field of American law." *F.J. Vollmer Co., Inc. v. Magaw,* 102 F.3d 591, 598 (D.C.Cir.1996), *citing Waterman Steamship Corp. v. Maritime Subsidy Bd.,* 901 F.2d 1119, 1124 (D.C.Cir. 1990). In *Vollmer,* the Court of Appeals noted that attorneys practicing administrative law in a specific regulated field normally acquire expertise in that field through experience, rather than through specialized training. Observing that "[i]f expertise acquired though practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements," the *Vollmer* court held that such a result was not supported by the legislative history of the Equal Access to Justice Act. 102 F.3d at 598. Applied to the instant case, *Vollmer* confirms that plaintiff is not entitled to a "special factor" enhancement, particularly in view of the fact—as noted by Magistrate Judge Kay—that plaintiff prevailed in the Court of Appeals on a routine issue of administrative law. R & R at 32.

## IV.

### A.

■■■■ Because he believed them to be ineligible for fees, Magistrate Judge Kay had no occasion in his Report & Recommendation to review the reasonableness of the requested fees for co-counsel Teras, Champagne, Von Neumann and Purcell. However, the record, including the transcripts of the evidentiary hearings held before Judge Kay, provides an adequate basis for the Court to make this determination.

Plaintiff has requested compensation for 517.1 hours spent on his case by Christopher Teras. R & R at 33. The record contains conflicting information about the reasonableness of this request. In contrast to Kooritzky, there is no evidence that significant portions of time spent by Teras can be attributed to inexperience with the court system. Judging by his appearances before this Court, Teras provided able assistance to the plaintiff. Also weighing in Teras's favor

is his testimony that he voluntarily "pared down" the hours for which he ultimately claimed reimbursement. *Id.* at 52–53. However, the evidentiary hearings revealed that Teras failed to keep contemporaneous records for most of the hours claimed, which resulted in unreliable, and sometimes implausible (e.g. billing over 24 hours in one day), retrospective estimates of how much time he spent on plaintiff's case. *See* January 24, 1997 Hrg. Tr. at 65—79. Moreover, the lack of precision in the billing records, coupled with the number of hours billed by Kooritzky for similar tasks raise a concern about duplicative billing.

For these reasons, the hours billed by Teras exceed that which is reasonable, and must be reduced. *See Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc) ("Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority."). A court's calculation of "reasonable" hours is, by nature, imprecise. With respect to Kooritzky's hours, the Report & Recommendation employed an item-by-item analysis, a method which provided invaluable information to this Court, and at the same time, far surpassed the degree of precision normally achieved in most attorneys' fees cases. For this Court to undertake a similarly detailed analysis of the hours billed by Teras would be an inefficient use of judicial resources. *Cf. Copeland v. Marshall,* 641 F.2d at 903 ("It is neither practical nor desirable to expect the trial court judge to have reviewed each paper in this massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours."). Instead, given the close working relationship between Kooritzky and Teras during this case, and the equally poor recordkeeping by each, Magistrate Judge Kay's analysis serves as a useful benchmark for determining the amount of hours for which Teras is reasonably entitled to be compensated. The detailed scrutiny of Kooritzky's time undertaken in the Report & Recommendation and in this Memorandum resulted in reimbursement for approximately 42% of the hours originally billed by Kooritzky himself. Compared with Kooritzky, Teras employed a more credible—

albeit imperfect—method of retrospectively estimating his time than did Kooritzky, *see* Jan. 24, 1997 Hrg. Tr. at 53–64, and the hours claimed in the individual billing entries are more reasonable in relationship to the work performed. Balancing all of foregoing considerations in light of the success ulti-mately achieved by the plaintiff, it is the judgment of the Court that the number of hours billed by Teras should be reduced by 40%. Employing the annual statutory rates as determined by Judge Kay, plaintiff is enti-tled to the following compensation for work performed by Teras:

| | Hours Claimed | | Hours Granted | x | Adjusted Statutory Rate | | |
|-------|---------------|----------|---------------|---|-------------------------|---|-------------|
| 1991: | 109.5 | x 60% = | 65.7 | x | $113.48 | = | $ 7,455.64 |
| 1992: | 115 | x 60% = | 69.0 | x | $116.33 | = | $ 8,026.78 |
| 1993: | 161.5 | x 60% = | 96.9 | x | $120.00 | = | $11,628.00 |
| 1994: | 40.5 | x 60% = | 24.3 | x | $121.73 | = | $ 2,958.04 |
| 1995: | 90.6 | x 60% = | 54.4 | x | $124.88 | = | $ 6,793.47 |
| Total | | | | | | = | $36,861.93 |

### B.

Plaintiff also claims compensation for 25 hours of work performed by Margot Champagne and 40 hours of work performed by Ronald VonNeumann. However, it ap-pears that the sole documentation of the work performed by these attorneys is in the form of general affidavits, in which Cham-pagne states that she "rendered approxi-mately 25 professional hours of legal ser-vices" on behalf of plaintiff, and in which legal assistant Thomas Moore declares that he has "personal knowledge that Mr. Von Neumann rendered approximately 40 profes-sional hours of legal services in the above captioned matter." *See* Plaintiff's Supple-mental Summary of Attorney's Fees and Ex-penses (July 6, 1995) at Exhibits G and D. While there is no reason to doubt the veraci-ty of these statements, they are insufficient to enable the Court to determine what work was performed, whether the expenditure of hours was reasonable, and whether the work was duplicative of that performed by other attorneys. Accordingly, plaintiff's request for fees for work performed by Champagne and VonNeumann is denied.

By contrast, plaintiff has provided a detailed account of hours expended by Sean Purcell. *See* Plaintiff's Supplemental Peti-tion for Attorney's Fees and Expenses (Dec. 13, 1995) at Exh. A. Unlike Kooritzky and Teras, Purcell testified that he kept detailed and contemporaneous records of his time as it was expended, Feb. 19, 1997 Hrg. Tr. at 49, and those expenditures of time appear to be reasonable. Plaintiff is thus entitled to compensation for the entire 86.7 hours claimed for work performed by Purcell in 1995, at the inflation-adjusted statutory rate of $124.88 per hour, for a total of $10,827.10.

### V.

Finally, plaintiff claims compensation for 1,533.3 hours expended by legal assistant Thomas Moore. The reasonableness of this claim requires further scrutiny by the Court. However, there also remains a question which requires further briefing by the par-ties: namely, the "prevailing market rate" for Moore's services. Plaintiff's claim for Moore's services is based on a rate of $75 per hour, which is the rate at which Teras pur-portedly bills clients for work performed by legal assistants. R & R at 36. However, Moore is not in the same situation as legal assistants at Teras's firm, whose billing rates presumably reflect other costs of the firm in maintaining them as full-time employees. Plaintiff's request characterizes Moore as an "independent contractor," a term which seems accurate in light of the fact that he not an employee of either Kooritzky or Teras. R & R at 37–38. It is difficult to imagine that a paralegal working on an independent con-tract basis—particularly someone with no prior litigation experience—could collect $75

per hour from the law firms for whom he or she works. The record contains no evidence that Moore has actually received such a fee from any client. A subsequent Memorandum will determine both the hours and the rate at which plaintiff will be compensated for Moore's services.

## VI.

 The Report & Recommendation noted that plaintiff has submitted two separate claims for "other expenses" as part of his fee request. Magistrate Judge Kay correctly concluded that the first claim for $410.00 is not recoverable, because plaintiff has failed to indicate the basis for the charge. R & R at 41. Plaintiff filed no objection to this conclusion. The second claim consists of a bill for $295.42 from the law firm of Jaeger and Teras. As stated above, expenses incurred by Teras are potentially compensable. However, charges for taxi fares and postage are not covered by the Act. *Action on Smoking and Health v. Civil Aernoautics Bd.*, 724 F.2d 211, 223 (D.C.Cir.1984). Because postage is disallowed, it follows that charges for other forms of document delivery, including the use of fascimile machines, should also be disallowed. Of the $295.42 claimed, plaintiff is entitled only to $134.70, which represents the total of the photocopying charges claimed. *Id.*

A final order implementing the decisions explained herein will be issued upon determination of the compensation to which plaintiff is entitled for services rendered by Mr. Moore.