**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, COUNCIL OF LOCALS NO. 214, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 85–1500.

United States Court of Appeals, District of Columbia Circuit.

Argued May 28, 1986.

Decided Aug. 26, 1986.

Kevin M. Grile, with whom Mark D. Roth, Washington, D.C., was on brief, for petitioner.

William R. Tobey, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and Steven H. Svartz, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before WALD, Chief Judge, ROBIN-SON, Circuit Judge, and EDWARD D. RE,* Chief Judge, United States Court of International Trade.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

The sole issue presented in this case is whether a federal agency must bargain under the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101–7135 (the FSLMR or the Statute), over an "official time" proposal that would allow certain employees to spend 100% of their time handling union representational functions. In contract negotiations with the Air Force Logistics Command (AFLC or the agency), the American Federation of Government Employees, AFL–CIO, Council of Locals No. 214 (AFGE or the union) proposed to allow twelve employees in a bargaining unit of 72,311 to spend their entire paid duty time performing representational activities on behalf of the union. AFGE presently seeks review of a decision by the Federal Labor Relations Authority (FLRA) that this bargaining proposal was negotiable only at the election of AFLC. Although section 7131(d) of the FSLMR provides for the granting of official time in any amount jointly agreed upon by the agency and the union, the FLRA ruled that section 7131(d) must be subordinated to section 7106(b)(1) of the Statute, which reserves to the agency the choice of whether to negotiate on "the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty" of the agency. The FLRA concluded that because AFGE's

official time proposal was integrally related to the number of employees or positions assigned to an agency work project or organizational entity, it was negotiable only at the election of the agency. *See American Federation of Government Employees, Council of Locals No. 214 and Department of the Air Force, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio,* 19 F.L.R.A. 215 (1985). We find that the FLRA's decision deprives section 7131(d) of any reasonable meaning. Accordingly, we reject the FLRA's statutory construction and vacate its negotiability decision.

## I. BACKGROUND

AFGE is the exclusive representative of the more than 72,000 civilians employed nationwide at bases of the Air Force Logistics Command. In the course of negotiations on a new collective bargaining agreement between AFGE and AFLC, the union proposed that sixty union representatives at the various AFLC bases be granted 100% official time. A grant of official time allows employees to be paid as if they were performing their normal duties whenever they perform representative functions during the working day. AFLC declared this proposal to be outside of its statutory duty to bargain, and the union petitioned the FLRA for review of this assertion of non-negotiability. *See* 5 U.S.C. §§ 7105(a)(2)(E), 7117(c). Before the FLRA issued its negotiability decision, the union's proposal was modified to provide for only twelve full-time representatives. It was this modified proposal that the FLRA finally considered.[1]

---

* Sitting by designation pursuant to Title 28 U.S.C. § 293(a).

1. As finally modified, the union's proposal provided:

*Section 4.07*
 *Full-Time Union Representatives*
  In addition to the representatives authorized official time provided above, the Union is hereby authorized the following numbers of representatives with 100 percent official time:

(a) 2 100% representatives at Warner Robins AFB, Kelly AFB, Tinker AFB, Hill AFB, and McClelland AFB.
(b) 1 100% representative at Newark Air Station and Wright-Patterson AFB.
(c) ½ 100% representative at Battle Creek, Michigan.
*See* American Fed'n of Gov't Employees, Council of Locals No. 214 and Dep't of the Air Force, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio, 19 F.L.R.A. 215, 215–16 (1985).

In evaluating the negotiability of this bargaining proposal, the FLRA first determined, as a factual matter, that the direct effect of permitting twelve employees to perform union representational activities would be to "necessitate a reallocation of positions and employees, forcing changes in [AFLC's] staffing patterns." 19 F.L.R.A. at 221. Because the proposal would effectively reduce the number of employees available to perform the tasks of any work project, and because, under the facts of this case, AFLC was unable to "divid[e] among the remaining employees the tasks of the employee who assumes full-time Union responsibilities," the effect of AFGE's proposal was "to require management, in order to maintain staffing levels, to add positions or employees to the work project or organizational entity from which an employee is designated to serve as a full-time Union representative." 19 F.L.R.A. at 222.

The FLRA then considered the relationship between two potentially conflicting provisions of the FSLMR bearing on the negotiability issue. The FLRA noted that when considered in isolation, section 7131(d) clearly indicated that the union's

proposal was negotiable. Section 7131(d) provides that "any employee representing an exclusive representative ... shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest." 5 U.S.C. § 7131(d).[2] The FLRA found a conflict, however, between this section and section 7106, the "Management Rights" provision of the Statute,[3] which lists a variety of managerial prerogatives about which the agency may, but need not, negotiate. Under section 7106(b)(1), an agency may negotiate *at its election* "on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work." 5 U.S.C. § 7106(b)(1).

In determining whether a bargaining proposal falls within section 7106(b)(1) prior FLRA decisions have applied a "direct effects test." *See, e.g., American Federation of Government Employees, Local 3669 and Veterans Administration Medical Center, Minneapolis, Minnesota, 2*

**2.** Section 7131 provides that official time may not be used for any activities relating to the internal business of a labor organization (including the solicitation of membership, elections of union officials and collection of dues). Such activity must be performed during the time an employee is in a non-duty status. 5 U.S.C. § 7131(b).

Section 7131 also makes explicit provision for official time for employees representing a union in the negotiation of a collective bargaining agreement, 5 U.S.C. § 7131(a), and for an employee participating on behalf of a labor organization in any proceedings before the FLRA, 5 U.S.C. § 7131(c).

**3.** The management rights provision of the FSLMR reads as follows:

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
(1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and
(2) in accordance with applicable laws—
(A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

(B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;
(C) with respect to filling positions, to make selections for appointments from—
(i) among properly ranked and certified candidates for promotion; or
(ii) any other appropriate source; and
(D) to take whatever actions may be necessary to carry out the agency mission during emergencies.
(b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
(1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work;
(2) procedures which management officials of the agency will observe in exercising any authority under this section; or
(3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.
5 U.S.C. § 7106.

F.L.R.A. 641 (1980). Under this test, a proposal that "is directly or integrally related to the numbers, types and grades of employees or positions assigned to a work project, organizational entity or tour of duty, so as to be determinative of such numbers, types and grades, is negotiable [only] at the election of the agency." *See* 19 F.L.R.A. at 219. The FLRA reasoned that because in this case the direct effect of AFGE's proposal would be to require a reallocation of positions and employees and force changes in AFLC's staffing patterns, the union's proposal was "integrally related to, so as to be determinative of," the numbers of employees assigned to a work project, organizational entity or tour of duty. 19 F.L.R.A. at 222.

The FLRA resolved the conflict between the rights reserved to management by section 7106(b)(1) and the union's right to negotiate for official time as provided under section 7131(d) in favor of the agency. Labelling its statutory construction an "accommodation" between management's right to accomplish its mission and the union's right to perform its representational function, the FLRA concluded that "where the agency can show, in the circumstances of a given case, that the use of official time will interfere with the accomplishment of the agency's work, the exercise of management's rights will take precedence." 19 F.L.R.A. at 219.

## II. ANALYSIS

### A. *Standard of Review*

Congress has entrusted the FLRA with the primary responsibility for administering and interpreting the FSLMR. The FLRA was intended to develop specialized expertise in the field of federal labor relations and to use this expertise to give content to the Statute's principles and goals. *See Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). Consequently, the FLRA's interpretation of its Statute, if reasonable, is entitled to deference. *See American Federation of Government Employees v. FLRA*, 778

F.2d 850, 856 (D.C.Cir.1985). Where Congress has not spoken to the question at issue, a court must affirm the agency's construction of its statute if that construction is "permissible." *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

The deference due to the FLRA's interpretation, however, " 'cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.' " *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. at 97, 104 S.Ct. at 444 (quoting *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965)). A court must not "rubber-stamp" an agency's statutory construction if that construction is inconsistent with a statutory mandate or frustrates a congressional policy underlying the statute. *See Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. at 97, 104 S.Ct. at 444; *American Federation of Government Employees v. FLRA*, 750 F.2d 143, 146 (D.C.Cir.1984). Where an agency's interpretation would deprive a statutory provision of virtually all effect, a court should not affirm the agency's interpretation absent "legislative history of exceptional clarity." *American Federation of Government Employees, Local 2782 v. FLRA*, 702 F.2d 1183, 1187 (D.C.Cir.1983). In the instant case, we find that even under the deferential standard of *Chevron*, the FLRA's interpretation of the Statute is an impermissible one. It ignores the familiar canon that statutes should be construed "to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *see also Washington Hospital Center v. Bowen*, 795 F.2d 139, 145 (D.C.Cir.1986). The result of the FLRA's construction here is to drain the official time provision of any reasonable meaning and thus to frustrate the intent of Congress. We therefore reject the FLRA's interpretation.

## B. *The Effects of Official Time*

■ We find nothing in the record to contradict the FLRA's conclusion that in the specific circumstances of this case the direct effect of AFGE's proposal would be to require AFLC to increase the number of employees or positions in certain of its work projects. We conclude, however, that this effect by itself is insufficient to eliminate an agency's duty to bargain over proposals for official time. Any bargaining proposal concerning official time for representational activities necessarily reduces the number of person-hours available for performing the work of the agency, and therefore has a direct effect on agency staffing patterns. Application of a "direct effects test" to reach an "accommodation" between section 7106(b)(1) and section 7131(d) will always make official time proposals negotiable only at the agency's election. The FLRA's accommodation thus results in an effective repeal of section 7131(d).

The FLRA seeks to avoid this critique of its statutory interpretation by stating that for purposes of determining negotiability, it distinguishes between direct and indirect effects on staffing patterns on the basis of whether the agency can accomplish its mission merely by reallocating tasks to existing employees in a work project or whether the agency must hire new employees or reallocate employees or positions from one work project to another. *Compare* 19 F.L.R.A. at 220–22 (finding official time proposal negotiable only at agency's election) *with Overseas Federation of Teachers and Department of Defense Dependent Schools, Mediterranean Region, APO New York,* 21 F.L.R.A. No. 81 (1986) (finding official time proposal negotiable). This refinement takes us nowhere: if this test

were consistently applied to the negotiability of new proposals for official time, its effect would be to make such proposals negotiable at the agency's election whenever an agency is efficiently run. Any provision for additional official time in an efficiently run organization will require the agency to reassign work to other employees and, if present employees are already busy throughout the day, to hire additional employees to perform these reassigned duties. *Cf. National Treasury Employees Union v. FLRA,* 793 F.2d 371, 374–75 (D.C. Cir.1986) (FLRA's reasoning was defective since it would render any proposal concerning working conditions nonnegotiable unless an agency were "squandering its resources"). The FLRA's interpretation would penalize employees who work productively throughout their working day by denying them any additional amount of official time for union activities, regardless of whether the amount of official time sought is 100% or 1% of an employee's workday. We cannot attribute any such absurd intent to Congress.[4]

In specifically providing for official time, Congress must have envisioned either some reallocation of positions or some additional hiring and hence some limitation in management's right to determine the number of employees assigned to a work project or organizational subdivision. Otherwise, the official time provision of section 7131(d) would be a dead letter. As Judge Scalia recently wrote in *American Federation of Government Employees, Local 2782 v. FLRA,* 702 F.2d at 1187, "[i]t would require legislative history of exceptional clarity to induce us to adopt an interpretation which ... would deprive [a provision of the FSLMR] of virtually all effect." *See also Washington Hospital Center v. Bow-*

---

4. Because we find that the FLRA may not employ a direct effects test to determine when section 7106(b)(1) takes priority over section 7131(d), we fortunately need not reach the more general issue of the propriety of the FLRA's use of a direct effects test to determine the scope of section 7106(b)(1). In the past this court has upheld the FLRA's use of a direct effects test to resolve certain potential conflicts between provisions of the FSLMR, *see Department of De-*

*fense, Army-Air Force Exchange Serv. v. FLRA,* 659 F.2d 1140, 1159–60 (D.C.Cir.1981) (resolving potential conflict between section 7106(b)(2) and section 7106(a)), *cert. denied,* 455 U.S. 945 (1982), but has rejected that same test when applied to resolve other such potential conflicts, *see American Fed'n of Gov't Employees, Local 2782 v. FLRA,* 702 F.2d 1183 (D.C.Cir.1983) (resolving potential conflict between section 7106(b)(3) and section 7106(a)).

*en,* 795 F.2d 139, at 145 (D.C.Cir.1986). The legislative history in this case fails to indicate that Congress intended any such perverse effect.[5] Thus, whatever ambiguities exist in sections 7106(b)(1) and 7131(d), we cannot accept the FLRA's accommodation as a reasonable one. The FLRA cannot assume that Congress' explicit provision for official time was not meant to be a meaningful guarantee.

The FLRA's generalized concern to protect the ability of agencies to carry out their mission cannot displace a specific congressional provision providing for the negotiability of official time proposals. Although the FLRA presents its "direct effects" approach as a means of determining on a case-by-case basis whether an official time proposal will interfere with the accomplishment of the agency's work, the "direct effects test" in fact isolates only those official time proposals that will require an agency to hire or transfer an employee. Thus, the only impairment of managerial prerogatives against which the FLRA provides protection is the very impairment that Congress must have contemplated in providing for official time at all—*i.e.,* infringement of management's right to determine the number of employees in an organizational subdivision.[6]

The FLRA's suggestion that its interpretation is necessary to protect the ability of agencies to function effectively also ignores the express language of section 7131(d). In that section Congress has provided that the agency and the union together should determine the amount of official time "reasonable, necessary, and *in the public interest*" (emphasis added). Congress thus committed the determination of the public interest to the union and the agency together, not to the agency alone.[7]

Finally, the FLRA's prediction of the dire consequences following from a determination that an official time proposal is negotiable reflects a misunderstanding of the concept of negotiability. A finding of negotiability means only that a proposal is a proper subject of bargaining, not that the proposal ought to be implemented on the merits. An agency has no obligation to abandon what it conceives to be the best interests of the agency merely because it must negotiate on an official time proposal. *See Department of Defense v. FLRA,* 659 F.2d at 1157.[8]

---

5. The legislative history of the FSLMR consists primarily of "conflicting generalities, providing assurance, if they are all to be taken at face value, that the proposed bill offers the best of both worlds, fully preserving the prerogatives of federal managers (statements upon which the [FLRA] justly relies) while yet fully promoting collective bargaining on all significant issues (statements which the [FLRA] understandably tends to ignore)." *American Fed'n of Gov't Employees, Local 2782 v. FLRA,* 702 F.2d at 1187.

Although the legislative history contains no discussion of the interrelationship between sections 7106(b)(1) and 7131(d), it does indicate that both the Senate and the House contemplated that official time for representational activities would be negotiable. *See* S.Rep. No. 969, 95th Cong., 2d Sess. 112–13 (1978); H.R. Rep. No. 1403, 95th Cong., 2d Sess. 59 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723.

6. Although AFLC is subject to congressionally imposed limits on the number of positions available for staffing its work, *see* 19 F.L.R.A. at 220, we need not address today the negotiability of an official time proposal that would require an agency to exceed congressionally imposed limits on staffing in order to maintain the agency's present level of productivity. The record in this

case reveals that AFLC was operating with vacancies. 10 F.L.R.A. at 221. In reaching its negotiability decision, moreover, the FLRA clearly did not rely on section 7117(a), which provides that the duty to bargain does not extend to matters inconsistent with federal law. Had the FLRA relied on section 7117(a) as support for its negotiability decision, it would not, of course, have found the proposal negotiable at AFLC's option: an agency may not negotiate concerning a proposal inconsistent with federal law. The FLRA's decision thus reveals that the FLRA relied solely on the effect of the proposal on AFLC's staffing pattern. Accordingly, we leave for the FLRA in the first instance the issue of the potential conflict between sections 7117(a) and 7131(d).

7. Moreover, the union's obligation to bargain in good faith, 5 U.S.C. § 7117, sets some limits on the amount of official time that a union may request and thus to some extent protects the agency's ability to function efficiently.

8. An examination of section 7106 as a whole reinforces our conclusion that section 7131(d) takes priority over section 7106(b)(1). Section 7106(a) delineates certain management preroga-

CONCLUSION

We therefore conclude that to the extent that the FLRA considers official time non-negotiable because it would require an agency to hire another employee or change its staffing pattern, its approach is an unreasonable interpretation of the Statute. Accordingly, we reverse the application of the direct effects test in this situation and remand this case to the FLRA so that it may issue an appropriate remedial order. *See also American Federation of Government Employees, Local 2782 v. FLRA,* 702 F.2d at 1186–88 (rejecting direct effects test for determining when a bargaining proposal permitted under section 7106(b)(3) is barred by section 7106(a)).

The union contends that the proper remedy in this case is to include retroactively the union's official time proposal in the existing AFLC–AFGE collective bargaining agreement. This argument relies on an arbitration award handed down before the FLRA's negotiability decision at issue in this case. When AFLC and AFGE proved unable to reach agreement on the official time proposal and other issues, the Federal Service Impasses Panel (FSIP) "directed that the impasse be referred to mediation-arbitration for resolution." *Department of the Air Force, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio and American Federation of Government Employees, Council of Locals, No. 214,* 18 F.L.R.A. 710, 710 (1985); *see also* 5 U.S.C. § 7119. Under an arbitrator's direction, AFGE and AFLC eventually reached agreement on all disputed issues except the official time proposal. The arbitrator then determined that the union's proposal was the "more reasonable approach to official time" and directed the parties to include the union's proposal in their collective agreement. The FLRA, however, set

aside this award on the ground that the FLRA had not yet determined the negotiability of the disputed official time proposal. Under the FSLMR, only the FLRA and not the FSIP can resolve an agency's claim of nonnegotiability. *See* 5 U.S.C. § 7105(a)(2)(E); *American Federation of Government Employees v. FLRA,* 778 F.2d at 854. The FLRA concluded that in imposing the union's proposal on AFLC the arbitrator had implicitly found the union's proposal negotiable. His award was therefore contrary to section 7105(a)(2)(E), which vests the FLRA with the sole authority to resolve such negotiability issues. *Department of the Air Force, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio and American Federation of Government Employees, Council of Locals, No. 214,* 18 F.L.R.A. 710, 712 (1985).

AFGE argues that an order directing AFLC to bargain with AFGE on its proposal would merely duplicate the earlier process in which its official time proposal was found to be "the more reasonable approach." This argument is more properly made to the FLRA in the first instance as it raises issues that the FLRA has not yet had the opportunity to address. The union's argument turns in part on an interpretation of the original decision to refer the parties' dispute to arbitration. It seems probable that the arbitrator's award was intended to take effect only if the FLRA eventually resolved the negotiability issue in favor of the union. Otherwise, the arbitration process was a completely futile exercise. If, however, the FSIP erred in directing that the official time dispute be arbitrated, we leave it to the FLRA to devise an equitable remedy for this error.

*So ordered.*

---

tives that are not negotiable subjects of bargaining, including the authority of management to determine the organization and number of employees of an agency and to assign work. *See American Fed'n of Gov't Employees v. FLRA,* 778 F.2d 850, 852–53 (1985). Unless section 7131(d) carves out an exception to section 7106(a), section 7106(a) would preclude any negotiation of official time provisions, since official time al-

ways affects an agency's ability to assign work. If official time proposals are not affected by section 7106(a), however, then they are also not affected by section 7106(b)(1). Section 7106(b)(1) serves only to *limit* the reach of section 7106(a). Section 7106(b)(1) takes certain management prerogatives listed in section 7106(a) and makes them negotiable at the agency's election rather than not negotiable at all.