**Paul D. HALVERSON,
et al., Appellants,**

v.

**Rodney E. SLATER, Secretary,
United States Department of
Transportation, Appellee.**

No. 99–5115.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 23, 2000.

Decided March 31, 2000.

John Longstreth argued the cause for appellants. With him on the briefs were Donald A. Kaplan and Mark Ruge.

Rudolph Contreras, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence, Assistant U.S. Attorney, and Dale C. Andrews, Deputy Assistant General Counsel for Litigation, U.S. Department of Transportation.

Before: EDWARDS, Chief Judge, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

After a previous panel of this court invalidated a final rule issued by the Department of Transportation, the prevailing parties, appellants herein, filed an application for attorneys' fees and costs pursuant to the Equal Access to Justice Act. The district court denied the application, finding the Department's defense of the rule, though unsuccessful, "substantially justified" within the meaning of the Act. Because the district court failed adequately to explain its decision, and because we find unpersuasive the Department's argument that its position was substantially justified, we grant appellants' application for fees and expenses and remand for the district court to calculate the precise amount due.

I

The Great Lakes Pilotage Act of 1960, 46 U.S.C. §§ 9301 *et seq.*, requires that foreign ships traveling the Great Lakes take on an experienced American or Canadian pilot. *Id.* § 9302(a). The Act directs the Secretary of Transportation to set standards for pilot qualifications, selection, registration, training, and working conditions. *Id.* § 9303.

Until 1995, the Secretary had delegated Pilotage Act responsibilities to the United States Coast Guard as permitted by 46 U.S.C. § 2104(a): "The Secretary may delegate the duties and powers conferred by this subtitle [Subtitle II, titled 'Vessels and Seamen'] to any officer, employee, or member of the Coast Guard, and may provide for the subdelegation of those duties and powers." Pilotage Act responsibilities are among the Secretary's Subtitle II duties. Pursuant to a final rule issued on December 11, 1995, the Secretary transferred certain Great Lakes pilot responsibilities from the Coast Guard to the St.

Lawrence Seaway Development Corporation. *Organization and Delegation of Powers and Duties; Transfer of Great Lakes Pilotage Authority From the Coast Guard to the Saint Lawrence Seaway Development Corporation,* 60 Fed.Reg. 63,444 (Dec. 11, 1995). In support of this transfer, the Secretary invoked his general delegation authority under 49 U.S.C. § 322(b): "The Secretary may delegate, and authorize successive delegations of, duties and powers of the Secretary to an officer or employee of the Department."

Troubled by the safety implications of the transfer, appellants, two Great Lakes pilots and two associations of Great Lakes pilots, filed suit in the United States District Court for the District of Columbia claiming that the delegation exceeded the Secretary's authority under section 2104(a). According to the Pilots, that provision permits the Secretary to transfer Pilotage Act responsibilities only to the Coast Guard, not to the St. Lawrence Seaway Development Corporation. The Department responded that section 2104(a) does not limit the Secretary's general authority to delegate responsibilities pursuant to section 322(b). Granting summary judgment for the Department, the district court found section 2104(a) "fully consistent with [section 322(b)'s] broader language." *Halverson v. Pena,* 1996 WL 217885, *6 (D.D.C.1996).

This court reversed. *Halverson v. Slater,* 129 F.3d 180 (D.C.Cir.1997). Applying step one of the *Chevron* framework, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the panel "conclude[d] that the plain meaning of section 2104(a) limits delegation of [Pilotage Act] functions to the United States Coast Guard and that section 322(b) cannot fairly be construed to expand the limitation." 129 F.3d at 181. The panel found that the Secretary's interpretation of section 2104(a) violated three separate canons of construction: it "plainly violates the familiar doctrine that the Congress cannot be presumed to do a futile thing," *id.* at 185; it "runs afoul of the cardinal canon of statutory construction that '[w]e must read the statutes to give effect to each if we can do so while preserving their sense and purpose,'" *id.* (quoting *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)); and it is "irreconcilable with the statutory construction principle, *expressio unius est exclusio alterius,* that is, the 'mention of one thing implies the exclusion of another thing,'" 129 F.3d at 185 (quoting *Ethyl Corp. v. EPA,* 51 F.3d 1053, 1061 (D.C.Cir. 1995)). The Secretary's assertion that section 2104(a) has wartime significance, the panel said, was "patently erroneous." 129 F.3d at 185. Concluding that "even if section 322(b)'s scope is ambiguous, requiring recourse to *Chevron* step two, we would be compelled to reject the Secretary's interpretation as unreasonable because it 'would deprive [section 2104(a) ] of virtually all effect,'" the panel remanded to the district court with instructions to vacate the final rule. *Id.* at 189 (quoting *American Fed'n of Gov't Employees v. FLRA,* 798 F.2d 1525, 1528 (D.C.Cir.1986)) (alternation in original).

The Pilots then applied for attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Secretary neither contested the Pilots' status as prevailing parties nor claimed the existence of "special circumstances." Instead, the Secretary argued that his interpretation of section 322(b) as authorizing the delegation of Pilotage Act responsibilities to the St. Lawrence Seaway Development Corporation was "substantially justified." The district court agreed. Describing the issue as

a "straightforward, almost textbook, administrative law problem that was resolved by using well-established general principles of statutory interpretation," it denied the Pilots' EAJA application. *Halverson v. Slater*, No. 96–0028, Mem. Op. at 9 (D.D.C. Apr. 6, 1999). The Pilots now appeal.

## II

■ Standards for resolving EAJA fee applications have emerged from a growing body of case law. The Government has the burden of proving that its position, including both the underlying agency action and the arguments defending that action in court, was "substantially justified" within the meaning of the Act. *See Wilkett v. ICC*, 844 F.2d 867, 871 (D.C.Cir. 1988). "Substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person. That is no different from .... [having] a reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal · quotation marks and citation omitted). While a court's "merits reasoning may be quite relevant to the resolution of the substantial justification question," we have cautioned that "[t]he inquiry into the reasonableness of the Government's position ... may not be collapsed into our antecedent evaluation of the merits, for the EAJA sets forth a distinct legal standard." *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C.Cir. 1996) (internal quotation marks omitted). For example, "because 'unreasonable' may have different meanings in different contexts, even the presence of that term or one of its synonyms in the merits decision does not necessarily suggest that the Government will have a difficult time establishing that its position was substantially justified." *Id.* "The relevance of a court's reasoning on the merits to the reasonableness inquiry under the Equal Access Act thus depends on the nature of the case." *Id.*

■ Appellate courts review district court EAJA decisions for abuse of discre-

tion. *See Pierce*, 487 U.S. at 563, 108 S.Ct. 2541. Giving substantial deference to the district court, we will reverse if we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Vollmer*, 102 F.3d at 596 (internal quotation marks and citations omitted). In exercising our appellate responsibility, we recognize the awkward position in which the EAJA sometimes places our district court colleagues. Where, as here, the district court originally accepts the Government's position and is then reversed on appeal, the EAJA requires the district court to determine whether the very Government argument it previously accepted was not substantially justified, *i.e.*, unreasonable. Yet district courts have awarded fees in just such delicate circumstances. *See, e.g., Kooritzky v. Herman*, 6 F.Supp.2d 1, 4 (D.D.C.1997), *rev'd in part on other grounds*, 178 F.3d 1315 (D.C.Cir.1999).

■ With these considerations in mind, we turn first to an examination of the reasons the district court gave in support of its finding that the Department's position at the *agency level* was substantially justified. The district court attributed great significance to the Department's reasons for transferring Pilotage Act functions to the St. Lawrence Seaway Development Corporation, pointing out that two studies—one by the Department's Inspector General—had raised serious questions about the Coast Guard's stewardship. *See Halverson*, Mem. Op. at 4. The district court also relied heavily on the process that led to the promulgation of the final rule:

Thus, what this rather extended discussion of the Secretary's delegation decision shows is a history of widespread criticism from internal staff studies, as well as members of Congress and the industry, of the failure of the Coast Guard to carry out its responsibilities under [the Pilotage Act], administrative changes to remedy the problem, of the

failure of those administrative changes to improve the situation, formation of an interagency task force to study the issue, recommendations by that task force (concurred in by the Coast Guard) to delegate certain functions to [the St. Lawrence Seaway Development Corporation], and a formal rule-making process noticed in the Federal Register with submission of more than 100 comments, before the Secretary made the final decision to transfer functions, which was then challenged by Plaintiffs in this lawsuit.

*Id.* at 6. Had the Pilots prevailed on a claim that the transfer was arbitrary and capricious, such factors would indeed have been relevant to whether the Department's position was substantially justified. But the merits panel invalidated the final rule at *Chevron* step one, so neither the policy reasons motivating the transfer nor the process by which the decision was made has anything at all to do with evaluating the strength of the Department's claim that section 322(b) authorized the delegation.

Also in support of its conclusion that the Department's position at the agency level was substantially justified, the district court said that "there was virtually no question raised about the legal authority of the Secretary to proceed with the delegation of functions, and certainly no serious legal question raised by the Plaintiffs themselves." *Id.* at 7. Of course, had no one questioned the Department's authority, that fact might well have been relevant to the substantial justification analysis. But that isn't what happened. True, the Pilots did not file written comments challenging the Department's legal authority, but two groups of Congressmen did, and the Department discussed the issue at some length in the final rule. *See Organization and Delegation of Powers and Duties; Transfer of Great Lakes Pilotage Authority From the Coast Guard to the Saint Lawrence Seaway Development Corporation,* 60 Fed.Reg. at 63,448–49.

Turning to the second stage of the EAJA analysis—the district court's evalua-tion of the Department's position before the merits panel—we are guided by our decision in *Vollmer.* There, we concluded that the district court, having "[s]imply repeat[ed] arguments made ... before the merits panel without offering any explanation why those arguments showed the [Government's] position was reasonable," had "largely failed to grapple with the reasoning underlying this court's merits decision." *Vollmer,* 102 F.3d at 596. In this case, the district court explained the issue before the merits panel: "The question to be decided in the case was whether the broad grant of authority in Section 322(b) was limited by the specific provisions of Section 2104(a)...." *See Halverson,* Mem. Op. at 8. The district court repeated the Department's position before the merits panel: "The Secretary argued, in essence, that Section 322(b) should be read expansively to give him largely unfettered discretion to delegate duties and powers to agency officers and employees." *Id.* The district court characterized the issue: "[T]his case presented a rather straightforward, almost textbook, administrative law problem...." *Id.* at 9. The district court described the panel's holding: "In its opinion, the Court of Appeals then engaged in a rather lengthy, detailed *Chevron* analysis, concluding, under both step one and step two of *Chevron,* that 'the language of section 2104(a) compels the conclusion that the Congress did not intend to authorize the delegation of [Pilotage Act] functions to a non-Coast Guard official.'" *Id.* (quoting *Halverson,* 129 F.3d at 185). But *Vollmer* requires that the district court do more than explain, repeat, characterize, and describe the merits panel decision. Under *Vollmer,* the district court must analyze the merits panel's reasoning to determine whether the Department's position, though rejected, was substantially justified.

The closest the district court comes to such an analysis are three observations: "There was no existing case law as to the interpretation of either [section 322(b) or section 2104(a) ]." "[T]he legislative histo-

ry was sparse and not dispositive." "There was nothing egregious, extreme, frivolous, or foolish in the positions taken by either party." *Halverson,* Mem. Op. at 7, 9. Although each of these observations may well be true, none answers the question before the district court—was the Department's position before the merits panel substantially justified within the meaning of EAJA?

Take the district court's first point. Had contrary case law existed, that fact certainly would have been relevant to the issue before the district court, for the Department's position most likely would *not* have been substantially justified. But the *absence* of contrary case law does not necessarily lead to the opposite conclusion, *i.e.,* that the Department's position was substantially justified. There may be no contrary case law for reasons having nothing at all to do with whether the Department's position had merit. Perhaps until now secretarial delegations under sections 2104(a) or 322(b) had never been challenged. Or perhaps it had never occurred to the Department to argue that section 2104(a) permitted delegation to any agency other than the Coast Guard.

The district court's observation about the sparseness of legislative history likewise tells us nothing about whether the Department's position was substantially justified. Recall that the merits panel's decision rested on its conclusion that "the plain meaning of Section 2104(a) limits delegation of [Pilotage Act] functions." *Halverson,* 129 F.3d at 181. As we have explained, "[c]ryptic" legislative history "surely is not enough to overcome the plain meaning of the statute." *Ethyl Corp.,* 51 F.3d at 1063. Although at the Department's urging the merits panel did consider section 2104(a)'s legislative history, it concluded that "[t]he Secretary's attempts to overcome the plain meaning of section 2104(a) by reference to its legislative history are equally unsuccessful." *Halverson,* 129 F.3d at 187.

■ Finally, a Government position that is neither "foolish," "egregious," "ex-

treme," nor "frivolous" is not necessarily substantially justified. For EAJA purposes, substantially justified means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541 (internal quotation marks and citation omitted). Although a frivolous Government argument is obviously neither reasonable nor substantially justified, the opposite is not necessarily true: an unreasonable—not substantially justified—argument need not be frivolous. Words like "foolish," "egregious," and "extreme" are equally weak measures of EAJA fee liability.

For all of these reasons, we cannot sustain the district court's finding that the Department's position either at the agency level or in litigation was substantially justified. We thus turn to our own analysis of the Department's argument that its reliance on section 322(b) was substantially justified. *See Jacobs v. Schiffer,* 204 F.3d 259, 264 (D.C.Cir.2000) ("Because the question of whether the Department's position was substantially justified can be answered as a matter of law, a remand is unnecessary. . . .").

In its brief here and in the district court, the Department identified three factors it claims show that its position was reasonable. Two of these—the absence of previous challenges to the Secretary's delegation authority and section 2104(a)'s legislative history—were unsuccessfully relied on by the district court. For its third justification, the Department states that "the interpretation the government espoused with respect to the meaning of section 2104(a) was supported under the precedent cited in the Federal Register notice and also argued in Court." What precedents? Reviewing the final rule ourselves, we can find no citations to relevant decisions of either this court or any other court. If the Department means to refer to precedents cited in its brief before the merits panel, the Department should have identified the cases and explained why they show that its position was substantial-

ly justified. Having done neither, and falling far short of sustaining its burden of proof, the Department's brief simply repeats in summary fashion the arguments made before the merits panel.

The Department has failed to demonstrate that its position was substantially justified for a very good reason: the merits panel, as even a cursory review of its opinion reveals, found the Department's position entirely without merit. Rejecting the Department's section 322(b) argument on *Chevron* step one grounds, the panel held that "the plain meaning of section 2104(a) limits delegation of [Pilotage Act] functions to the United States Coast Guard and that section 322(b) cannot fairly be construed to expand the limitation." *Halverson,* 129 F.3d at 181. The panel reached this conclusion through an elementary application of three standard canons of statutory construction, finding resort to other tools of statutory construction or legislative history entirely unnecessary. "[E]ven if section 322(b)'s scope is ambiguous, requiring recourse to *Chevron* step two," the panel concluded, it was "compelled to reject the Secretary's interpretation as unreasonable because [that interpretation] 'would deprive [section 2104(a)] of virtually all effect.'" *Id.* at 189 (quoting *American Fed'n of Gov't Employees,* 798 F.2d at 1528).

Put simply, not only did the merits panel think the issue before it was easy, but we can find not even a wisp of a suggestion that it gave any credence to the Department's argument that section 322(b) authorized delegation of Pilotage Act responsibilities to the St. Lawrence Seaway Development Corporation. And most important, the Department has offered us no persuasive reason for believing that this was an issue over "which reasonable minds could differ." *Halverson,* Mem. Op. at 9. If the Department's position in this case was substantially justified, we can hardly imagine an EAJA case that the Government will ever lose.

In reaching our conclusion, we emphasize that we have not relied solely on the fact that the merits panel resolved this case on *Chevron* step one grounds. As we made clear in *Vollmer,* because the EAJA has its own standard, "[t]he inquiry into the reasonableness of the Government's position ... may not be collapsed into our antecedent evaluation of the merits...." *Vollmer,* 102 F.3d at 595 (internal quotation marks omitted); *see also Cooper v. United States R.R. Retirement Bd.,* 24 F.3d 1414, 1417 (D.C.Cir.1994) (finding an agency's decision, which was overturned as unsupported by substantial evidence, not substantially justified because it "lacked a reasonable factual basis") (emphasis omitted); *Wilkett,* 844 F.2d at 871 (noting that some arbitrary and capricious agency actions, such as an agency's "failure to provide an adequate explanation for its actions or failure to consider some relevant factor in reaching its decision, may not warrant a finding that an agency's action lacked substantial justification") (*citing Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1089 (D.C.Cir.1986)). Just as *Vollmer's* EAJA determination did not rest entirely on the merits panel's conclusion that the agency's position was unreasonable, we have not based our EAJA determination solely on the merits panel's conclusion that Congress has "directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. While this *Chevron* case turned out to be quite easy, other *Chevron* step one cases have presented quite difficult issues and involved "substantially justified" arguments on both sides. A prime example is our decision in *Martini v. Federal National Mortgage Ass'n,* 178 F.3d 1336 (D.C.Cir. 1999). A Title VII case in which the Government ultimately prevailed, *Martini* considered whether the statute requires complainants to wait one hundred eighty days after filing a complaint with the Equal Employment Opportunity Commission before suing in federal court. Finding that it did, we considered the relevant statute and surrounding provisions, evaluated the legislative history, found inconclusive the application of several canons of construction, and inquired into the purpose of the stat-

ute before resting our decision on an ancillary provision that made Congress's intent sufficiently clear to resolve the case at *Chevron* step one. *Id.* at 1340–48. By comparison, the merits panel's rejection of the Department's argument in this case rested on the easily ascertainable plain meaning of one provision, section 2104(a).

A final point about our analysis of the merits panel's decision. The panel characterized the Department's position in various ways, including "patently erroneous" and "irreconcilable with" canons of construction. *Halverson,* 129 F.3d at 185. Of course, not all panels use language the same way. Another panel equally unpersuaded by the Department might have used words like "unsupported," "unconvincing," or simply "without merit." We thus think it would be unwise for a prevailing party's eligibility for EAJA fees to turn solely on the particular words a particular merits panel uses to describe the Government's position. Thus in *Vollmer,* although we took account of the merits panel's characterization of the Government's position as "incredible," we ultimately rested our award of EAJA fees on our own conclusion that the Government had offered nothing to demonstrate that its position was substantially justified. Here too we have certainly considered the merits panel's words, but our EAJA conclusion rests primarily on our view, informed by an analysis of the merits panel's opinion, that the case was easy and the Department's arguments worthy of little credence, as well as on the Department's failure to offer any convincing reasons for believing that its interpretation of section 322(b) was substantially justified.

The decision of the district court is reversed, and the case is remanded for the district court to calculate the amount of fees and expenses the Department must pay to the Pilots.

*So ordered.*