United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 23, 2000 Decided March 31, 2000 

 No. 99-5115

 Paul D. Halverson, et al., 
 Appellants

 v.

 Rodney E. Slater, Secretary, 
 United States Department of Transportation, 
 Appellee

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 96cv00028)

 John Longstreth argued the cause for appellants. With 
him on the briefs were Donald A. Kaplan and Mark Ruge.

 Rudolph Contreras, Assistant U.S. Attorney, argued the 
cause for appellee. With him on the brief were Wilma A. 
Lewis, U.S. Attorney, R. Craig Lawrence, Assistant U.S. 

Attorney, and Dale C. Andrews, Deputy Assistant General 
Counsel for Litigation, U.S. Department of Transportation.

 Before: Edwards, Chief Judge, Tatel and Garland, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Tatel.

 Tatel, Circuit Judge: After a previous panel of this court 
invalidated a final rule issued by the Department of Trans-
portation, the prevailing parties, appellants herein, filed an 
application for attorneys' fees and costs pursuant to the 
Equal Access to Justice Act. The district court denied the 
application, finding the Department's defense of the rule, 
though unsuccessful, "substantially justified" within the 
meaning of the Act. Because the district court failed ade-
quately to explain its decision, and because we find unpersua-
sive the Department's argument that its position was substan-
tially justified, we grant appellants' application for fees and 
expenses and remand for the district court to calculate the 
precise amount due.

 I

 The Great Lakes Pilotage Act of 1960, 46 U.S.C. ss 9301 et 
seq., requires that foreign ships traveling the Great Lakes 
take on an experienced American or Canadian pilot. Id. 
s 9302(a). The Act directs the Secretary of Transportation 
to set standards for pilot qualifications, selection, registration, 
training, and working conditions. Id. s 9303.

 Until 1995, the Secretary had delegated Pilotage Act re-
sponsibilities to the United States Coast Guard as permitted 
by 46 U.S.C. s 2104(a): "The Secretary may delegate the 
duties and powers conferred by this subtitle [Subtitle II, 
titled 'Vessels and Seamen'] to any officer, employee, or 
member of the Coast Guard, and may provide for the sub-
delegation of those duties and powers." Pilotage Act respon-
sibilities are among the Secretary's Subtitle II duties. Pursu-
ant to a final rule issued on December 11, 1995, the Secretary 
transferred certain Great Lakes pilot responsibilities from the 
Coast Guard to the St. Lawrence Seaway Development Cor-
poration. Organization and Delegation of Powers and 

Duties; Transfer of Great Lakes Pilotage Authority From 
the Coast Guard to the Saint Lawrence Seaway Development 
Corporation, 60 Fed. Reg. 63,444 (Dec. 11, 1995). In support 
of this transfer, the Secretary invoked his general delegation 
authority under 49 U.S.C. s 322(b): "The Secretary may 
delegate, and authorize successive delegations of, duties and 
powers of the Secretary to an officer or employee of the 
Department."

 Troubled by the safety implications of the transfer, appel-
lants, two Great Lakes pilots and two associations of Great 
Lakes pilots, filed suit in the United States District Court for 
the District of Columbia claiming that the delegation exceed-
ed the Secretary's authority under section 2104(a). Accord-
ing to the Pilots, that provision permits the Secretary to 
transfer Pilotage Act responsibilities only to the Coast Guard, 
not to the St. Lawrence Seaway Development Corporation. 
The Department responded that section 2104(a) does not limit 
the Secretary's general authority to delegate responsibilities 
pursuant to section 322(b). Granting summary judgment for 
the Department, the district court found section 2104(a) "fully 
consistent with [section 322(b)'s] broader language." Halver-
son v. Pena, 1996 WL 217885, *6 (D.D.C. 1996).

 This court reversed. Halverson v. Slater, 129 F.3d 180 
(D.C. Cir. 1997). Applying step one of the Chevron frame-
work, see Chevron, U.S.A., Inc. v. Natural Resources Defense 
Council, Inc., 467 U.S. 837, 842 (1984), the panel "conclude[d] 
that the plain meaning of section 2104(a) limits delegation of 
[Pilotage Act] functions to the United States Coast Guard and 
that section 322(b) cannot fairly be construed to expand the 
limitation." 129 F.3d at 181. The panel found that the 
Secretary's interpretation of section 2104(a) violated three 
separate canons of construction: it "plainly violates the famil-
iar doctrine that the Congress cannot be presumed to do a 
futile thing," id. at 185; it "runs afoul of the cardinal canon of 
statutory construction that '[w]e must read the statutes to 
give effect to each if we can do so while preserving their 
sense and purpose,' " id. (quoting Watt v. Alaska, 451 U.S. 
259, 267 (1981)); and it is "irreconcilable with the statutory 
construction principle, expressio unius est exclusio alterius, 

that is, the 'mention of one thing implies the exclusion of 
another thing,' " 129 F.3d at 185 (quoting Ethyl Corp. v. EPA, 
51 F.3d 1053, 1061 (D.C. Cir. 1995)). The Secretary's asser-
tion that section 2104(a) has wartime significance, the panel 
said, was "patently erroneous." 129 F.3d at 185. Concluding 
that "even if section 322(b)'s scope is ambiguous, requiring 
recourse to Chevron step two, we would be compelled to 
reject the Secretary's interpretation as unreasonable because 
it 'would deprive [section 2104(a)] of virtually all effect,' " the 
panel remanded to the district court with instructions to 
vacate the final rule. Id. at 189 (quoting American Fed'n of 
Gov't Employees v. FLRA, 798 F.2d 1525, 1528 (D.C. Cir. 
1986)) (alternation in original).

 The Pilots then applied for attorneys' fees and expenses 
under the Equal Access to Justice Act, 28 U.S.C. s 2412(d). 
The EAJA provides that "a court shall award to a prevailing 
party other than the United States fees and other expenses 
... incurred by that party in any civil action (other than 
cases sounding in tort), including proceedings for judicial 
review of agency action, brought by or against the United 
States ... unless the court finds that the position of the 
United States was substantially justified or that special cir-
cumstances make an award unjust." 28 U.S.C. 
s 2412(d)(1)(A). The Secretary neither contested the Pilots' 
status as prevailing parties nor claimed the existence of 
"special circumstances." Instead, the Secretary argued that 
his interpretation of section 322(b) as authorizing the delega-
tion of Pilotage Act responsibilities to the St. Lawrence 
Seaway Development Corporation was "substantially justi-
fied." The district court agreed. Describing the issue as a 
"straightforward, almost textbook, administrative law prob-
lem that was resolved by using well-established general prin-
ciples of statutory interpretation," it denied the Pilots' EAJA 
application. Halverson v. Slater, No. 96-0028, Mem. Op. at 9 
(D.D.C. Apr. 6, 1999). The Pilots now appeal.

 II

 Standards for resolving EAJA fee applications have 
emerged from a growing body of case law. The Government 

has the burden of proving that its position, including both the 
underlying agency action and the arguments defending that 
action in court, was "substantially justified" within the mean-
ing of the Act. See Wilkett v. ICC, 844 F.2d 867, 871 (D.C. 
Cir. 1988). "Substantially justified" means "justified in sub-
stance or in the main--that is, justified to a degree that could 
satisfy a reasonable person. That is no different from ... 
[having] a reasonable basis both in law and fact." Pierce v. 
Underwood, 487 U.S. 552, 565 (1988) (internal quotation 
marks and citation omitted). While a court's "merits reason-
ing may be quite relevant to the resolution of the substantial 
justification question," we have cautioned that "[t]he inquiry 
into the reasonableness of the Government's position ... may 
not be collapsed into our antecedent evaluation of the merits, 
for the EAJA sets forth a distinct legal standard." F.J. 
Vollmer Co., Inc. v. Magaw, 102 F.3d 591, 595 (D.C. Cir. 
1996) (internal quotation marks omitted). For example, "be-
cause 'unreasonable' may have different meanings in different 
contexts, even the presence of that term or one of its syn-
onyms in the merits decision does not necessarily suggest 
that the Government will have a difficult time establishing 
that its position was substantially justified." Id. "The rele-
vance of a court's reasoning on the merits to the reasonable-
ness inquiry under the Equal Access Act thus depends on the 
nature of the case." Id.

 Appellate courts review district court EAJA decisions for 
abuse of discretion. See Pierce, 487 U.S. at 563. Giving 
substantial deference to the district court, we will reverse if 
we have "a definite and firm conviction that the court below 
committed a clear error of judgment in the conclusion it 
reached upon a weighing of the relevant factors." Vollmer, 
102 F.3d at 596 (internal quotation marks and citations omit-
ted). In exercising our appellate responsibility, we recognize 
the awkward position in which the EAJA sometimes places 
our district court colleagues. Where, as here, the district 
court originally accepts the Government's position and is then 
reversed on appeal, the EAJA requires the district court to 
determine whether the very Government argument it previ-
ously accepted was not substantially justified, i.e., unreason-

able. Yet district courts have awarded fees just in such 
delicate circumstances. See, e.g., Kooritzky v. Herman, 
6 F. Supp.2d 1, 4 (D.D.C. 1997), rev'd in part on other 
grounds, 178 F.3d 1315 (D.C. Cir. 1999).

 With these considerations in mind, we turn first to an 
examination of the reasons the district court gave in support 
of its finding that the Department's position at the agency 
level was substantially justified. The district court attributed 
great significance to the Department's reasons for transfer-
ring Pilotage Act functions to the St. Lawrence Seaway 
Development Corporation, pointing out that two studies, one 
by the Department's Inspector General, had raised serious 
questions about the Coast Guard's stewardship. See Halver-
son, Mem. Op. at 4. The district court also relied heavily on 
the process that led to the promulgation of the final rule:

 Thus, what this rather extended discussion of the Secre-
 tary's delegation decision shows is a history of wide-
 spread criticism from internal staff studies, as well as 
 members of Congress and the industry, of the failure of 
 the Coast Guard to carry out its responsibilities under 
 [the Pilotage Act], administrative changes to remedy the 
 problem, of the failure of those administrative changes to 
 improve the situation, formation of an interagency task 
 force to study the issue, recommendations by that task 
 force (concurred in by the Coast Guard) to delegate 
 certain functions to [the St. Lawrence Seaway Develop-
 ment Corporation], and a formal rule-making process 
 noticed in the Federal Register with submission of more 
 than 100 comments, before the Secretary made the final 
 decision to transfer functions, which was then challenged 
 by Plaintiffs in this lawsuit.
 
Id. at 6. Had the Pilots prevailed on a claim that the transfer 
was arbitrary and capricious, such factors would indeed have 
been relevant to whether the Department's position was 
substantially justified. But the merits panel invalidated the 
final rule at Chevron step one, so neither the policy reasons 
motivating the transfer nor the process by which the decision 
was made has anything at all to do with evaluating the 

strength of the Department's claim that section 322(b) autho-
rized the delegation.

 Also in support of its conclusion that the Department's 
position at the agency level was substantially justified, the 
district court said that "there was virtually no question raised 
about the legal authority of the Secretary to proceed with the 
delegation of functions, and certainly no serious legal question 
raised by the Plaintiffs themselves." Id. at 7. Of course, had 
no one questioned the Department's authority, that fact might 
well have been relevant to the substantial justification analy-
sis. But that isn't what happened. True, the Pilots did not 
file written comments challenging the Department's legal 
authority, but two groups of Congressmen did, and the De-
partment discussed the issue at some length in the final rule. 
See Organization and Delegation of Powers and Duties; 
Transfer of Great Lakes Pilotage Authority From the Coast 
Guard to the Saint Lawrence Seaway Development Corpora-
tion, 60 Fed. Reg. at 63,448-49.

 Turning to the second stage of the EAJA analysis--the 
district court's evaluation of the Department's position before 
the merits panel--we are guided by our decision in Vollmer. 
There, we concluded that the district court, having "[s]imply 
repeat[ed] arguments made ... before the merits panel with-
out offering any explanation why those arguments showed the 
[Government's] position was reasonable," had "largely failed 
to grapple with the reasoning underlying this court's merits 
decision." Vollmer, 102 F.3d at 596. In this case, the district 
court explained the issue before the merits panel: "The 
question to be decided in the case was whether the broad 
grant of authority in Section 322(b) was limited by the specific 
provisions of Section 2104(a)...." See Halverson, Mem. Op. 
at 8. The district court repeated the Department's position 
before the merits panel: "The Secretary argued, in essence, 
that Section 322(b) should be read expansively to give him 
largely unfettered discretion to delegate duties and powers to 
agency officers and employees." Id. The district court 
characterized the issue: "[T]his case presented a rather 
straightforward, almost textbook, administrative law prob-
lem...." Id. at 9. The district court described the panel's 

holding: "In its opinion, the Court of Appeals then engaged 
in a rather lengthy, detailed Chevron analysis, concluding, 
under both step one and step two of Chevron, that 'the 
language of section 2104(a) compels the conclusion that the 
Congress did not intend to authorize the delegation of [Pilot-
age Act] functions to a non-Coast Guard official.' " Id. (quot-
ing Halverson, 129 F.3d at 185). But Vollmer requires that 
the district court do more than explain, repeat, characterize, 
and describe the merits panel decision. Under Vollmer, the 
district court must analyze the merits panel's reasoning to 
determine whether the Department's position, though reject-
ed, was substantially justified.

 The closest the district court comes to such an analysis are 
three observations: "There was no existing case law as to the 
interpretation of either [section 322(b) or section 2104(a)]." 
"[T]he legislative history was sparse and not dispositive." 
"There was nothing egregious, extreme, frivolous, or foolish 
in the positions taken by either party." Halverson, Mem. Op. 
at 7, 9. Although each of these observations may well be 
true, none answers the question before the district court--
was the Department's position before the merits panel sub-
stantially justified within the meaning of EAJA?

 Take the district court's first point. Had contrary case law 
existed, that fact certainly would have been relevant to the 
issue before the district court, for the Department's position 
most likely would not have been substantially justified. But 
the absence of contrary case law does not necessarily lead to 
the opposite conclusion, i.e., that the Department's position 
was substantially justified. There may be no contrary case 
law for reasons having nothing at all to do with whether the 
Department's position had merit. Perhaps until now secre-
tarial delegations under sections 2104(a) or 322(b) had never 
been challenged. Or perhaps it had never occurred to the 
Department to argue that section 2104(a) permitted delega-
tion to any agency other than the Coast Guard.

 The district court's observation about the sparseness of 
legislative history likewise tells us nothing about whether the 
Department's position was substantially justified. Recall that 

the merits panel's decision rested on its conclusion that "the 
plain meaning of Section 2104(a) limits delegation of [Pilotage 
Act] functions." Halverson, 129 F.3d at 181. As we have 
explained, "[c]ryptic" legislative history "surely is not enough 
to overcome the plain meaning of the statute." Ethyl Corp., 
51 F.3d at 1063. Although at the Department's urging the 
merits panel did consider section 2104(a)'s legislative history, 
it concluded that "[t]he Secretary's attempts to overcome the 
plain meaning of section 2104(a) by reference to its legislative 
history are equally unsuccessful." Halverson, 129 F.3d at 
187.

 Finally, a Government position that is neither "foolish," 
"egregious," "extreme," nor "frivolous" is not necessarily 
substantially justified. For EAJA purposes, substantially 
justified means "justified in substance or in the main--that is, 
justified to a degree that could satisfy a reasonable person." 
Pierce, 487 U.S. at 565 (internal quotation marks and citation 
omitted). Although a frivolous Government argument is obvi-
ously neither reasonable nor substantially justified, the oppo-
site is not necessarily true: an unreasonable--not substantial-
ly justified--argument need not be frivolous. Words like 
"foolish," "egregious," and "extreme" are equally weak mea-
sures of EAJA fee liability.

 For all of these reasons, we cannot sustain the district 
court's finding that the Department's position either at the 
agency level or in litigation was substantially justified. We 
thus turn to our own analysis of the Department's argument 
that its reliance on section 322(b) was substantially justified. 
See Jacobs v. Schiffer, No. 99-5217 (D.C. Cir. March 7, 2000), 
Slip. Op. at 7-8 ("Because the question of whether the 
Department's position was substantially justified can be an-
swered as a matter of law, a remand is unnecessary....").

 In its brief here and in the district court, the Department 
identified three factors it claims show that its position was 
reasonable. Two of these--the absence of previous chal-
lenges to the Secretary's delegation authority and section 
2104(a)'s legislative history--were unsuccessfully relied on by 
the district court. For its third justification, the Department 

states that "the interpretation the government espoused with 
respect to the meaning of section 2104(a) was supported 
under the precedent cited in the Federal Register notice and 
also argued in Court." What precedents? Reviewing the 
final rule ourselves, we can find no citations to relevant 
decisions of either this court or any other court. If the 
Department means to refer to precedents cited in its brief 
before the merits panel, the Department should have identi-
fied the cases and explained why they show that its position 
was substantially justified. Having done neither, and falling 
far short of sustaining its burden of proof, the Department's 
brief simply repeats in summary fashion the arguments made 
before the merits panel.

 The Department has failed to demonstrate that its position 
was substantially justified for a very good reason: the merits 
panel, as even a cursory review of its opinion reveals, found 
the Department's position entirely without merit. Rejecting 
the Department's section 322(b) argument on Chevron step 
one grounds, the panel held that "the plain meaning of section 
2104(a) limits delegation of [Pilotage Act] functions to the 
United States Coast Guard and that section 322(b) cannot 
fairly be construed to expand the limitation." Halverson, 129 
F.3d at 181. The panel reached this conclusion through an 
elementary application of three standard canons of statutory 
construction, finding resort to other tools of statutory con-
struction or legislative history entirely unnecessary. "[E]ven 
if section 322(b)'s scope is ambiguous, requiring recourse to 
Chevron step two," the panel concluded, it was "compelled to 
reject the Secretary's interpretation as unreasonable because 
it 'would deprive [section 2104(a)] of virtually all effect.' " Id. 
at 189 (quoting American Fed'n of Gov't Employees, 798 F.2d 
at 1528).

 Put simply, not only did the merits panel think the issue 
before it was easy, but we can find not even a wisp of a 
suggestion that it gave any credence to the Department's 
argument that section 322(b) authorized delegation of Pilot-
age Act responsibilities to the St. Lawrence Seaway Develop-
ment Corporation. And most important, the Department has 
offered us no persuasive reason for believing that this was an 

issue over "which reasonable minds could differ." Halverson, 
Mem. Op. at 9. If the Department's position in this case was 
substantially justified, we can hardly imagine an EAJA case 
that the Government will ever lose.

 In reaching our conclusion, we emphasize that we have not 
relied solely on the fact that the merits panel resolved this 
case on Chevron step one grounds. As we made clear in 
Vollmer, because the EAJA has its own standard, "[t]he 
inquiry into the reasonableness of the Government's position 
... may not be collapsed into our antecedent evaluation of 
the merits...." Vollmer, 102 F.3d at 595 (internal quotation 
marks omitted); see also Cooper v. United States R.R. Retire-
ment Bd., 24 F.3d 1414, 1417 (D.C. Cir. 1994) (finding an 
agency's decision, which was overturned as unsupported by 
substantial evidence, not substantially justified because it 
"lacked a reasonable factual basis") (emphasis omitted); 
Wilkett, 844 F.2d at 871 (noting that some arbitrary and 
capricious agency actions, such as an agency's "failure to 
provide an adequate explanation for its actions or failure to 
consider some relevant factor in reaching its decision, may 
not warrant a finding that an agency's action lacked substan-
tial justification") (citing Federal Election Comm'n v. Rose, 
806 F.2d 1081, 1089 (D.C. Cir. 1986)). Just as Vollmer's 
EAJA determination did not rest entirely on the merits 
panel's conclusion that the agency's position was unreason-
able, we have not based our EAJA determination solely on 
the merits panel's conclusion that Congress has "directly 
spoken to the precise question at issue." Chevron, 467 U.S. 
at 842. While this Chevron case turned out to be quite easy, 
other Chevron step one cases have presented quite difficult 
issues and involved "substantially justified" arguments on 
both sides. A prime example is our decision in Martini v. 
Federal National Mortgage Ass'n, 178 F.3d 1336 (D.C. Cir. 
1999). A Title VII case in which the Government ultimately 
prevailed, Martini considered whether the statute requires 
complainants to wait one hundred eighty days after filing a 
complaint with the Equal Employment Opportunity Commis-
sion before suing in federal court. Finding that it did, we 

considered the relevant statute and surrounding provisions, 
evaluated the legislative history, found inconclusive the appli-
cation of several canons of construction, and inquired into the 
purpose of the statute before resting our decision on an 
ancillary provision that made Congress's intent sufficiently 
clear to resolve the case at Chevron step one. Id. at 1340-48. 
By comparison, the merits panel's rejection of the Depart-
ment's argument in this case rested on the easily ascertain-
able plain meaning of one provision, section 2104(a).

 A final point about our analysis of the merits panel's 
decision. The panel characterized the Department's position 
in various ways, including "patently erroneous" and "irrecon-
cilable with" canons of construction. Halverson, 129 F.3d at 
185. Of course, not all panels use language the same way. 
Another panel equally unpersuaded by the Department might 
have used words like "unsupported," "unconvincing," or sim-
ply "without merit." We thus think it would be unwise for a 
prevailing party's eligibility for EAJA fees to turn solely on 
the particular words a particular merits panel uses to de-
scribe the Government's position. Thus in Vollmer, although 
we took account of the merits panel's characterization of the 
Government's position as "incredible," we ultimately rested 
our award of EAJA fees on our own conclusion that the 
Government had offered nothing to demonstrate that its 
position was substantially justified. Here too we have cer-
tainly considered the merits panel's words, but our EAJA 
conclusion rests primarily on our view, informed by an analy-
sis of the merits panel's opinion, that the case was easy and 
the Department's arguments worthy of little credence, as well 
as on the Department's failure to offer any convincing rea-
sons for believing that its interpretation of section 322(b) was 
substantially justified.

 The decision of the district court is reversed, and the case 
is remanded for the district court to calculate the amount of 
fees and expenses the Department must pay to the Pilots.

 So ordered.